IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARY JANE DILLON,** § | | |
| **Plaintiff** § | | |
| § | | |
| § | **CIVIL ACTION NO. 09-cv-1267** | |
| **VS.** § | | |
| § | | |
| **KS MANAGEMENT SERVICES, L.L.C.,** § | | |
| **KS MANAGEMENT SERVICES, L.L.C.** § | **JURY TRIAL DEMANDED** | |
| **f/k/a KS MANAGEMENT SERVICE,** § | | |
| **L.L.P., KELSEY-SEYBOLD MEDICAL** § | | |
| **GROUP, P.A., KELSEY-SEYBOLD** § | | |
| **MEDICAL GROUP, P.A. d/b/a** § | | |
| **KELSEY-SEYBOLD CLINIC** § | | |
| **Defendants** § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mary Jane Dillon (hereinafter referred to as "Dillon" or "Plaintiff"), and files Plaintiff's Complaint, against KS Management Services, L.L.C., KS Management Services, L.L.C. f/k/a KS Management Services, L.L.P., Kelsey-Seybold Medical Group, P.A, and Kelsey-Seybold d/b/a Kelsey-Seybold Clinic (hereinafter the "Defendants" or "Kelsey-Seybold") and for cause of action would show as follows:

**INTRODUCTION**

1. This action seeks equitable relief, compensatory and punitive damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violations of the Family Medical Leave Act

1

("FMLA"), age discrimination under the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act of 1990 ("ADA"), and Employee Retirement Income Security Act ("ERISA") and retaliation under these statutes suffered by Plaintiff in the course of her employment with the Defendants.

2. Plaintiff complains that she was discriminated against and terminated regarding the terms and conditions of her employment because of her use of FMLA, her age, and disability and in a manner which violated her rights under ERISA. Plaintiff was retaliated against for opposing the discrimination under these statutes. The reasons for the adverse employment actions taken against the Plaintiff were a pretext.

3. Plaintiff has filed a Charge of Discrimination with the EEOC on claims relating to ADEA and the ADA against the Defendants.

4. Plaintiff demands a jury on all issues triable to a jury.

**PARTIES**

5. Plaintiff Mary Jane Dillon is a female citizen of the United States, who is currently a resident of Houston, Texas.

6. Defendant KS Management Services, L.L.C. is a limited liability company authorized to do business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, Ann P. Thielke, 3100 Main Street, Suite 672, Houston, Texas 77002.

7. Defendant KS Management Services, L.L.C. f/k/a KS Management Services, L.L.P. is a limited liability company authorized to do business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, Ann P. Thielke, 3100 Main Street, Suite 672, Houston, Texas 77002.

8. Defendant Kelsey-Seybold Medical Group, P.A. is a Texas professional association authorized to do business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, Spencer R. Berthelsen, 2727 W. Holcombe Blvd., 4th Floor, Houston, Texas 77005.

9. Defendant Kelsey-Seybold Medical Group, P.A. d/b/a Kelsey-Seybold Clinic is a Texas professional association authorized to do business in the State of Texas. Service of the Summons and this Complaint may be made by serving its registered agent, Spencer R. Berthelsen, 2727 W. Holcombe Blvd., 4th Floor, Houston, Texas 77005.

10. Whenever in this Complaint it is alleged that Defendant or Defendants committed any act or omission, it is meant that the Defendant's or Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or Defendants, or was done in the routine normal course and scope of employment of the Defendants or Defendants' officers, directors, vice-principals, agents, servants, or employees unless otherwise stated in this Complaint.

11. The Kelsey-Seybold Defendants are an integrated enterprise.

## JURISDICTION

12. This action is brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, and the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.*, specifically 29 U.S.C. §1140.

13. The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Southern District of Texas. Houston Division as main location of Plaintiff's employment supervision and the relevant decision-makers were at the time located herein.

14. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

## PROCEDURAL REQUISITES

15. Plaintiff timely filed a charge of discrimination under ADEA and the ADA against Defendants under Charge Number 460-2008-01397 with the Equal Employment Opportunity Commission ("EEOC").

16. On or after January 16, 2009, the EEOC issued by regular mail a Notice of Right to Sue letter entitling Plaintiff to file an action in this Court for age discrimination under ADEA and the ADA.

17. The filing of this complaint has been accomplished within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

18. All other conditions precedent to filing these causes of action currently herein have been met.

## FACTS

19. Plaintiff is a female citizen of the United States.

20. Plaintiff's date of birth is October 29, 1949.

21. Since August 1988, Plaintiff worked as a Licensed Vocational Nurse ("LVN") at Kelsey-Seybold Clinic.

22. Plaintiff has been on medication to treat depression since the early 90's and it is anticipated she will remain on medication for this condition the rest of her life.

23. In late 2006, Plaintiff's physician changed her medication in late 2006 because of the significant weight gains she experienced with the old medication.

24. The new medication required an adjustment period and, because of this and other factors during that same time frame, she started therapy in March 2007.

25. During her employment with Kelsey-Seybold, Plaintiff was always been open concerning her depression and has been forthcoming with my supervisors about her status, treatment and drug regimen.

26. Plaintiff shared this information with Michelle Foster ("Foster"), Nurse Supervisor, and Wendy Shapiro ("Shapiro"), Clinic Administrator.  Foster and Shapiro knew, at least during the last year of Plaintiff's employment with Kelsey-Seybold, that she was being treated for depression, that she was on medication to treat the depression, and that her medication was changed in late 2006.

27. Beginning in January 2007, Plaintiff began experiencing severe episodes of depression during the adjustment period for the new medication.

28. As a result of these incidents, Plaintiff called in to take several unscheduled absences over the next few months.  Foster and Shapiro knew the reason for the unscheduled absences was that they were related to the depression and the need to still adjust to the new medication. Foster and Shapiro further knew it was uncertain if the new medication could fully and effectively treat Plaintiff's condition.

29. Plaintiff advised both of them that her condition was disabling and ongoing. During January 2007, Plaintiff missed four days of work when she was ill with the flu.

30. On or about March 29, 2007, Plaintiff was given a written counseling for excessive unscheduled absences.

31. During the meeting Plaintiff again informed Foster and Shapiro of the reason for her absences and discussed her diagnosis and treatment.

32. On or about March 30, 2007, Plaintiff submitted an application to Kelsey-Seybold requesting leave under the Family and Medical Leave Act ("FMLA"). On April 9, 2007, her request for leave under the FMLA was granted for intermittent family medical leave from March 14, 2007 to March 14, 2008.

33. Plaintiff submitted and was granted a second request for leave under the FMLA while she was off work from April 30, 2007 to May 7, 2007 for injuries to her back and knees sustained in a fall.

34. During the Spring of 2007, Plaintiff had several discussions with Shapiro concerning whether she would continue to work as a coordinator, in addition to her duties as a desk nurse in Internal Medicine.

35. Plaintiff advised Shapiro that she felt she could continue to perform all her duties when she was at work, subject to the depression.
On or about May 24, 2007, Shapiro informed Plaintiff that she was being removed from her coordinator duties and she would no longer be a desk nurse in Internal Medicine.

36. Plaintiff was informed that she had to notify Shapiro of which one of several open positions she would accept by May 29, 2007.

6

37. In addition, Shapiro informed Plaintiff that her request to take vacation on June 1 and June 4, 2007 was now denied. No reason for denying the request was given.

38. Plaintiff had sufficient vacation time to cover the request. Later that day, Shapiro contacted Plaintiff and stated that Shapiro had now decided to approve the vacation request.

39. On or about May 29, 2007, Plaintiff spoke to Shapiro and told her that she would have to accept the position as a room nurse for the residents in Family Practice. This was a significant demotion from Plaintiff's previous position in Internal Medicine.

40. On or about May 31, 2007, Plaintiff had another meeting with Shapiro and notified that she was to return to work as a desk nurse in Internal Medicine.

41. Plaintiff opposed her mistreatment.

42. On or about July 10, 2007, Plaintiff was called into a meeting and notified that she could either be fired or submit her resignation.

41. Plaintiff was told that either way my employment with Kelsey-Seybold was ending and this would be effective immediately.

42. Plaintiff knowing she had no choice gave her resignation to avoid being terminated. The reason given for her forced resignation or termination was excessive absences even though some of the absences were listed as excused and some were for absences that qualified for leave under the FMLA.

43. During Plaintiff's employment she was never notified that she needed to explicitly state that my absences were being taken as part of my FMLA approved leave.

7

44. Plaintiff informed her supervisors of the reasons for her absences and it was clear from her explanation that the absences were for the condition approved for intermittent leave under the FMLA.

45. Plaintiff was 57 years old when I was constructively discharged on July 10, 2007.

46. At least one other LVNs has had approximately the same number of unscheduled absences as Plaintiff did in 2007 and did not receive any disciplinary action, write-up, reprimand, demotion, or termination of their employment.

47. This other nurse was under the age of 40, did not have any disability and had not requested leave under the FMLA.

48. Plaintiff's salary upon her termination from Kelsey-Seybold was in excess of $64,000 per year plus full retirement and benefits.

49. As part of her benefits as an employee of Kelsey-Seybold, Plaintiff was covered under a pension and benefits plan that is governed by ERISA. As a result of her termination, Plaintiff will be deprived ERISA benefits she would have otherwise received had she not been illegally terminated by being forced to resign in lieu of termination.

## FAMILY MEDICAL LEAVE ACT VIOLATION

50. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

51. Plaintiff took time off from work to care for her own serious health condition under the Family Medical Leave Act ("FMLA").

52. After Plaintiff took leave under the FMLA, the Kelsey Seybold Defendants intentionally terminated her for taking FMLA leave and discriminated and retaliated against her in violation of the FMLA.

53. Defendants' termination of Plaintiff was in violation of 29 U.S.C. § 2601, *et seq.* and specifically, but not limited to, 29 U.S.C. §§ 2612, 2614 and 2615.

54. The Kelsey-Seybold Defendants retaliated against Plaintiff because she opposed their prohibited conduct in violation of 29 U.S.C. § 2601, *et seq.*

55. Further, Defendants intentionally acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Plaintiff.

56. As a result of Defendants' intentional actions in violation of the FMLA, Plaintiff has suffered loss of wage, benefits and retirement, both past and future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability will continue to suffer in the future.

## VIOLATIONS OF THE ADEA

57. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.
By terminating Plaintiff, the Kelsey-Seybold Defendants violated The Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").

58. Plaintiff was within the ADEA's protected class; i.e., she is over 40 years of age, specifically she was 54 years old at the time of her termination.

59. Plaintiff was qualified for the positions she held for the Kelsey-Seybold Defendants, and specifically for the position she held at the time of her termination.

60. Plaintiff was also qualified to assume other positions at the time of her

termination.

61. There was no legitimate non-discriminatory reason for Plaintiff's termination.

62. Other direct and/or circumstantial evidence exists showing that Defendants intended to discriminate on the basis of age in reaching its decision to terminate Plaintiff.

63. Age was a causal factor in the employment decisions made regarding Plaintiff.

64. As a result of Defendants' actions, Plaintiff has suffered a loss of wages and benefits in the past and will suffer a loss of wages and benefits in the future.

65. Additionally, the aforementioned discrimination and violation of ADEA was done willfully. An award of liquidated damages is therefore appropriate.

## DISABILITY DISCRIMINATION

66. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

67. The Kelsey-Seybold Defendants have discriminated against Plaintiff in violation of the Americans with Disabilities Act ("ADA").

68. Plaintiff was subjected to different terms and conditions of employment and was terminated by Defendant because of her disability or perceived disability, as that term is defined under the ADA.

69. The Kelsey-Seybold Defendants perceived or regarded Plaintiff as being disabled even though she could perform the essential function of her job with or without accommodations.

70. Defendants termination of Plaintiff's employment and subjecting her to different terms and conditions of employment constitutes disability discrimination the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

71. The Kelsey-Seybold Defendants failed to reinstate or rehire Plaintiff.

72. As a result of Defendant' discriminatory actions, Plaintiff has suffered lost wages in the past, loss of future earning capacity, emotional pain and suffering and mental anguish, lost benefits and retirement, all of which were caused by the Kelsey-Seybold Defendants treatment of Plaintiff, and, in all probability, Plaintiff will continue to suffer such damages in the future.

73. Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Plaintiff.

**WRONGFUL INTERFERENCE WITH PLAINTIFF'S EMPLOYMENT BENEFIT RIGHTS**

74. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

75. Pursuant to Plaintiff's employment with Kelsey-Seybold, Plaintiff was eligible to participate in Defendants' employment benefit plans.

76. The employment benefit plans offered by Kelsey-Seybold to its employees and the administration of those plans are governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1140, *et seq.*

77. By terminating Plaintiff's employment, Defendants interfered with her employment benefit plan, in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, *et seq.*

78. Defendants acted intentionally and with malice. Plaintiff has been damaged as a result of Defendants' conduct and sues for all appropriate relief afforded by ERISA, including punitive damages.

## RETALIATION

79. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

80. Plaintiff opposed discriminatory conduct that was in violation of the above federal employment statutes. Specifically she opposed the discrimination under under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. Plaintiff also opposed the discrimination under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and interference with her rights under the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq*.,

81. Defendants retaliated against Plaintiff for opposing the illegal conduct and Plaintiff has been damaged as a result of the retaliation. Plaintiff is entitled to all remedies enumerated under these statutes.

## ATTORNEY'S FEES

82. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

83. Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to the FMLA, 29 U.S.C. § 2601, *et seq.* ADEA, 29 U.S.C. § 621 *et seq.*, ADA, 42 U.S.C. § 12101, *et seq*. and ERISA, 29 U.S.C. § 1140, *et seq.*

## DAMAGES

84. Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

85. As a result of Defendants' violations of the FMLA, ADEA, the ADA, and ERISA, Plaintiff seeks the following relief: (1) back pay; (2) reinstatement, or if reinstatement is deemed not feasible, front pay; (3) loss of wages and benefits in the past and the future; (4) all liquidated damages; (5) costs of court, expert fees and attorneys' fees; (6) mental anguish and emotional distress in the past and future (7) any punitive, equitable or liquidated damage provided by law, and (8) pre-judgment and post-judgment interest as allowed by each statute.

86. Additionally, since Defendants' actions were committed with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages in an amount sufficient to deter Defendants and others similarly situated from this conduct in the future.

87. Additionally, since Defendants' actions were committed willfully, Plaintiff seeks an additional equal amount of back pay as liquidated damages under ADEA and the FMLA and punitive damages under ERISA.

## JURY DEMAND

88. Plaintiff requests a trial by jury on issues triable by a jury in this case.

## PRAYER

WHEREFORE, Plaintiff Mary Jane Dillion respectfully prays upon final trial hereof, this Court grant her: appropriate backpay, front pay, including, but not limited to, her salary and lost pension/retirement, insurance and other benefits past and future; compensatory and punitive damages as allowed by law; liquidated damages as allowed

by law; mental anguish damages; reasonable attorney's fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; prejudgment and post-judgment interest as allowed by law; taxable court costs; nominal, actual and exemplary damages as allowed by federal law and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

By: /s/ *Howard T. Dulmage*
_____
Howard T. Dulmage
MCCORMICK, HANCOCK & NEWTON
State Bar No. 24029526
Federal I.D. No. 28826
1900 West Loop South, Suite 700
Houston, Texas  77027
Telephone: (713) 297-0700
Telecopier: (713) 297-0710

ATTORNEY FOR PLAINTIFF,
MARY JANE DILLON

Of Counsel:

Joseph Y. Ahmad
AHMAD, ZAVITSANOS & ANAIPAKOS, P.C.
State Bar No. 00941100
Federal I.D. No. 11602
3460 Houston Center
1221 McKinney Street
Houston, Texas  77010
Telephone: (713) 655-1101
Telecopier: (713) 655-0062

## NOTICE OF ELECTRONIC FILING

  I, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Filing System of the U.S. District Court for the Southern District of Texas, on this the 27th day of April, 2009.

            /s/   Howard T. Dulmage
            _____
            Howard T. Dulmage